**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| WELLS FARGO BANK, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:09-cv-00297-CMH-TRJ |
| | ) |
| OLD REPUBLIC NATIONAL TITLE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF WELLS FARGO BANK, N.A.'S OPPOSITION TO DEFENDANT OLD
REPUBLIC NATIONAL TITLE INSURANCE COMPANY'S MOTION TO DISMISS**

William E. Copley (Va. Bar No. 43960)
GILBERT OSHINSKY LLP
1100 New York Avenue, N.W.
Suite 700
Washington, D.C.  20005-6133
Telephone: (202) 772-2200
Facsimile: (202) 772-3333

*Attorneys for Plaintiff Wells Fargo Bank, N.A.*

Dated: May 11, 2009

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ...............................................................................................1

STATEMENT OF FACTS .................................................................................. 4

    A.    The Conspirators.................................................................................. 4

    B.    The Conspiracy to Defraud................................................................. 5

    C.    TitlePro's Agency Relationship with Old Republic .............................. 7

    D.    The Contracts That Old Republic Issued Through TitlePro .................. 8

    E.    The Virginia Properties, Deeds of Trust, and Transactions at Issue...................... 9

ARGUMENT .................................................................................................. 10

I.    Wells Fargo Adequately Pled the Fact of TitlePro's and Khan's
Actual and Apparent Authority to Act as Agents of Old Republic. ................. 11

    A.    By Virginia Statute, TitlePro and Khan are Old Republic's
Agents for Purposes of Wells Fargo's Claims..................................... 11

    B.    TitlePro's and Khan's Common Law Agency Relationship with
Old Republic is an Issue of Fact that Cannot be Resolved on a
Motion to Dismiss............................................................................ 13

    C.    Old Republic is Liable for Wells Fargo's Losses Because Old
Republic Enabled TitlePro's and Khan's Fraud. ................................ 16

    D.    Even Under Old Republic's Erroneously Narrow View of Agency,
TitlePro and Khan Used Old Republic's Actual Authority to Further
the Conspiracy. ................................................................................ 18

II.    Wells Fargo has Stated an Actionable Claim for Breach of Contract. ............ 19

    A.    The Defalcations of Old Republic's Agents, TitlePro and Khan,
are No Bar to Wells Fargo's Breach of Contract Claims Arising
Under the Title Commitments. .......................................................... 19

    B.    FMI's Fraud is No Bar to Wells Fargo's Breach of Contract
Claims Arising Under the Closing Protection Letters. ......................... 20

# TABLE OF CONTENTS
## (Continued)

Page

C.    Wells Fargo is Covered by the Summit Drive Closing Protection Letter Despite the Absence of An Express "ISAOA-ATIMA" Designation .......................................................................... 25

III.    Wells Fargo Adequately Pled an Actionable Claim for Violation of the Wet Settlement Act. ................................................................. 26

IV.    Wells Fargo has Adequately Pled the Duty Breached by Old Republic Through its Agents, TitlePro and Khan. ......................................................... 27

CONCLUSION ................................................................................................ 30

## TABLE OF AUTHORITIES

Cases                                                                      Page(s)

*Bartlett v. Roberts Recapping, Inc.*,
    153 S.E.2d 193 (Va. 1967)........................................................................28

*Bernstein v. Nationwide Mut. Ins. Co.*,
    458 F.2d 506 (4th Cir. 1972) ................................................................24

*Bodell Constr. Co. v. Stewart Title Guar. Co.*,
    945 P.2d 119 (Utah 1997).....................................................................15

*Brown v. Hargraves*,
    96 S.E.2d 788 (Va. 1957)......................................................................20

*Carter v. Commonwealth*,
    562 S.E.2d 331 (Va. 2002)....................................................................27

*Clients' Sec. Fund of the Bar of N.J. v. Sec. Title & Guar. Co.*,
    634 A.2d 90 (N.J. 1993)........................................................................21

*Commercial Bus. Sys., Inc. v. Bellsouth Servs., Inc.*,
    453 S.E.2d 261 (Va. 1995)....................................................................22

*Daugherty v. Diment*,
    385 S.E.2d 572 (Va. 1989) ...................................................................21

*Dep't of Med. Assistance Servs. v. Beverly Healthcare of Fredericksburg*,
    601 S.E.2d 604 (Va. 2004)....................................................................27

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) ...............................................................10

*Employers Commercial Union Ins. Co. of Am. v. Great Am. Ins. Co.*,
    200 S.E.2d 560 (Va. 1973)....................................................................22

*Erickson v. Pardus*, 551 U.S. 89 (2007) ...................................................10

*Fidelity Nat'l Title Ins. Co. of Pa. v. Chicago Title Ins. Co.*,
    64 F.3d 656, 1995 WL 478028 (4th Cir. 1995) ............................ 13-14

*First Am. Title Ins. Co. v. Vision Mortgage Corp.*,
    689 A.2d 154 (N.J. Super. 1997) .........................................................17

# TABLE OF AUTHORITIES
## (Continued)

Cases                                                                    Page(s)

*Ford v. Guarantee Abstract & Title Co.*,
   553 P.2d 254 (Kan. 1976) .............................................................................17

*Foremost Guar. Corp. v. Meritor Sav. Bank*,
   910 F.2d 118 (4th Cir. 1990) .......................................................................22

*Jacobs v. Chicago Title Ins. Co.*,
   709 F.2d 3 (4th Cir. 1983) ................................................................2, 13, 17

*Jappell v. Am. Ass'n of Blood Banks*,
   162 F. Supp. 2d 476 (E.D. Va. 2001) ..........................................................28

*Jones v. Saxon Mortgage, Inc.*,
   537 F.3d 320 (4th Cir. 1998) .......................................................................23

*Lawyers Title Ins. Corp. v. Edmar Constr. Co., Inc.*,
   294 A.2d 865 (D.C. 1972) ...........................................................................17

*Leven v. Va. Nat'l Bank*,
   265 S.E.2d 758 (Va. 1980).............................................................................20

*Martin v. South Salem Land Co.*,
   26 S.E. 591 (Va. 1897)...................................................................................23

*Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*,
   991 F.2d 94 (4th Cir. 1993) .....................................................................11, 26

*Metco Prods. Inc. Div. of Case Mfg. Co. v. N.L.R.B.*,
   884 F.2d 156 (4th Cir. 1989) .......................................................................14

*Midwest Bankcentre v. Old Republic Title Co. of St. Louis*,
   247 S.W.3d 116 (Mo. App. 2008) ...............................................................29

*Moore Bros. Co. v. Brown & Root, Inc.*,
   207 F.3d 717 (4th Cir. 2000) ................................................................ 19-20

*Myerson v. Lawyers Title Ins. Corp.*,
   39 A.D.2d 190 (N.Y. Sup. Ct., App. Div. 1972) ..........................................17

*Nat'l Bank & Trust Co. v. Castle*,
   85 S.E.2d 228 (Va. 1955)...............................................................................20

## TABLE OF AUTHORITIES
### (Continued)

Cases                                                                    Page(s)

*Norwest Corp. v. Nebraska Dep't of Ins.*,
   571 N.W. 2d 628 (Neb. 1997) ...................................................................28

*Pinnacle Software Corp. v. Forms, Inc.*,
   24 Va. Cir. 96, 1991 WL 834966 (May 14, 1991) ...........................................14

*Proctor v. Metro. Money Store Corp.*,
   579 F. Supp. 2d 724 (D. Md. 2008) ..........................................................13

*Richards v. Attorneys' Title Guar. Fund, Inc.*,
   866 F.2d 1570 (10th Cir. 1989) ........................................................ 17-18

*Rogers v. Jefferson-Pilot Life Ins. Co.*,
   883 F.2d 324 (4th Cir. 1989) ...............................................................10

*RTC Mortgage Trust 1994 N-1 v. Fid. Nat'l Title Ins. Co.*,
   58 F. Supp. 2d 503 (D.N.J. 1999) ..................................................... 17-18

*Sears Mortgage Corp. v. Rose*,
   634 A.2d 74 (N.J. 1993) ................................................................ 17-18

*Selden v. Williams*,
   108 Va. 542 (1908) .........................................................................20

*St. Paul Fire & Marine Ins. Co. v. Jacobson*,
   48 F.3d 778 (4th Cir. 1995) ...............................................................23

*Superior Bank, F.S.B. v. Tandem Nat'l Mortgage*,
   197 F. Supp. 2d 298 (D. Md. 2000) ..........................................................28

*United Bhd. of Carpenters & Joiners of Am. v. Humphreys*,
   127 S.E.2d 98 (Va. 1962) ...................................................................15

*United States v. Fulcher*,
   188 F. Supp. 2d 627 (W.D. Va. 2002) ................................................... 15-16

*United States v. Idlewild Pharmacy*,
   308 F. Supp. 19 (E.D. Va. 1969) ...................................................... 23-24

*Universal Bank v. Lawyers Title Ins. Corp.*,
   62 Cal. App. 4th 1062 (Cal. Ct. App. 1997) ........................................... 14-15

# TABLE OF AUTHORITIES
## (Continued)

Cases                                                                                                    Page(s)

*Virginia Energy Co. v. Phibro Energy, Inc.*,
    711 F. Supp. 870 (W.D. Va. 1989) .................................................................... 13-14

*Walker v. Winchester Mem'l Hosp.*,
    585 F. Supp. 1328 (W.D. Va. 1984) .................................................................14

*Wardell v. Birdsong*,
    78 S.E. 564 (Va. 1913).....................................................................................23

*Whitt v. Godwin*,
    139 S.E.2d 841 (Va. 1965)...............................................................................20

*Williamson v. Old Brogue, Inc.*,
    350 S.E.2d 621 (1986) .....................................................................................29

Statutes and Rules

Fourth Circuit Local Rule 32.1 .................................................................................14

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 10

Fla. Stat. § 627.792 ..............................................................................................12, 16

Utah Code § 31A-23a-407 ....................................................................................12, 16

Va. Code § 6.1-2.13 ...............................................................................................1, 26

Va. Code § 6.1-2.15 ...............................................................................................4, 27

Va. Code § 6.1-2.19 *et seq.* .......................................................................................12

Va. Code § 6.1-2.21 .............................................................................................11, 12

Va. Code § 8.01-13 ....................................................................................................20

Va. Code § 18.2-499 ....................................................................................................1

Va. Code § 38.2-1801 ....................................................................................... *passim*

Miscellaneous

2A C.J.S. *Agency* § 155 .......................................................................................15, 16

## INTRODUCTION

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") filed this lawsuit against Defendant Old Republic National Title Insurance Company ("Old Republic") because Old Republic has refused to honor the title insurance it issued or to accept responsibility for the harm to Wells Fargo caused by a massive conspiracy to defraud perpetrated by Old Republic's agents — TitlePro, Inc. ("TitlePro") and TitlePro's president, Kamran Khan ("Khan").

As Wells Fargo alleged in its complaint, TitlePro and Khan conspired with a local mortgage lender, Financial Mortgage, Inc. ("FMI"), and FMI's president Vijay Taneja ("Taneja") to defraud financial institutions in the secondary loan market.  In furtherance of this conspiracy, TitlePro and Khan misappropriated settlement proceeds from escrow, prepared fraudulent settlement documents, and failed to record title documents.  As a result, Wells Fargo purchased notes that were supposed to be secured by deeds of trust in first lien position but received notes that are, in effect, unsecured, likely uncollectible and potentially worthless.

Old Republic has filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss Wells Fargo's claims for breach of contract, business conspiracy in violation of Va. Code § 18.2-499, civil conspiracy, fraud, violation of the Wet Settlement Act, Va. Code § 6.1-2.13, and negligence.  At base, Old Republic's motion is without merit because it is founded upon a false premise — that TitlePro and Khan were not acting within Old Republic's agency when they misappropriated settlement funds, generated fraudulent settlement documents, and failed to record title documents.

Each of Old Republic's primary arguments for dismissing Wells Fargo's claims is defeated by TitlePro's and Khan's agency relationship with Old Republic.  Old Republic's argument that unfulfilled contractual conditions bar Wells Fargo's breach of contract claims falls short because it was Old Republic's agents, TitlePro and Khan, who failed to fulfill those

conditions.  Likewise, Old Republic's argument that FMI's fraud invalidates the title insurance policies at issue is defeated by TitlePro's and Khan's participation in FMI's fraud.  Old Republic similarly misplaces reliance on a lack of agency as its basis for attacking Wells Fargo's business conspiracy, civil conspiracy, fraud, Wet Settlement Act and negligence claims.

Old Republic's central premise — that its agency relationship with TitlePro and Khan did not encompass their closing and escrow defalcations — is without merit for four reasons.

*First*, the General Assembly has enacted a statute, Va. Code § 38.2-1801, mandating that TitlePro and Khan "shall be held to be the agent" of Old Republic for purposes of "any controversy" between Old Republic and Wells Fargo.  In paragraph 29 of the complaint, Wells Fargo identified Va. Code § 38.2-1801 and described its effect, yet Old Republic does not even mention this statutory provision, much less dispute the provision's effect.

*Second*, placing aside Va. Code § 38.2-1801 for purposes of argument, agency status under Virginia common law is a question of fact and not the proper subject of a motion to dismiss.  Old Republic, not Wells Fargo, has the burden of establishing the outer limits of Old Republic's conceded agency relationship with TitlePro and Khan.  Old Republic cannot meet this burden in a motion to dismiss.

*Third,* Old Republic's assertion that it is not responsible for TitlePro's and Khan's defalcations cannot be reconciled with a fundamental premise in Virginia law — "whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it."  *Jacobs v. Chicago Title Ins. Co.*, 709 F.2d 3, 5 (4th Cir. 1983) (citation omitted) (applying this principle to a case involving title insurance and listing cases).  As discussed below, numerous courts have applied this principle to conclude that title insurers are liable under common law agency principles for the settlement and escrow

defalcations of their title agents.

*Fourth,* Old Republic ignores Wells Fargo's allegation that TitlePro and Khan furthered the conspiracy by issuing Old Republic title insurance policies, thereby "cloak[ing] the fraudulent mortgage loans with a false veil of legitimacy." (Compl. ¶ 24.) Accordingly, even under Old Republic's erroneously narrow theory of its agency relationship with TitlePro and Khan, Old Republic still could not prevail on its motion to dismiss.

Old Republic's agency relationship with TitlePro and Khan is fatal to its motion to dismiss. Old Republic's only argument for dismissing Wells Fargo's statutory business conspiracy, civil conspiracy and fraud claims is lack of agency. Likewise, Old Republic's arguments for dismissing Wells Fargo's claims arising under the title commitments lack merit because they are predicated on the failure of conditions — the proper disbursal of escrow funds and recording of title documents — that were solely in the control of TitlePro and Khan. Because TitlePro and Khan were Old Republic's agents, Old Republic cannot escape responsibility for their defalcations or use those defalcations to avoid its contractual obligations.

Likewise, Old Republic's argument that FMI's fraud renders the title commitments and CPLs "void *ab initio*" is defeated by TitlePro's and Khan's agency. TitlePro and Khan not only knew about — they helped perpetrate — the fraud. As a matter of Virginia law, their knowledge is imputed to Old Republic and precludes Old Republic from relying on FMI's fraud to avoid its contractual obligations to Wells Fargo.[1] Indeed, Old Republic has taken the position that FMI's fraud does *not* affect its obligations under a CPL (*i.e.,* the opposite position) in a proof of loss

---

[1]     Old Republic is also wrong when it alleges that the title commitments and CPLs were void *ab initio*. Virginia law makes clear that the contracts were merely voidable. In this case, Old Republic has not sought to rescind the contracts. Nor can it do so now, as Wells Fargo, an innocent third party, has relied upon the contracts and Old Republic has delayed seeking rescission for more than a year — too long under Virginia law — since it discovered the fraud.

that it filed in Taneja's bankruptcy. *See* Exhibit A, Proof of Claim No. 30, *In re Vijay K. Taneja*, Case No. 08-13293 (Bankr. E.D. Va. filed Oct. 7, 2008).

Old Republic concludes its memorandum in support of its motion with brief arguments that Wells Fargo, as a "secondary market purchaser," cannot bring a claim under the Wet Settlement Act and that Wells Fargo cannot establish a duty for purposes of its negligence claim. These arguments have no merit. Wells Fargo can bring a claim under the Wet Settlement Act because the Act states that "any person suffering losses" as a result of a violation can bring a claim. *See* Va. Code. § 6.1-2.15. Likewise, Wells Fargo has pled an actionable duty for negligence purposes because, as explained below, it was foreseeable that a secondary market purchaser would be injured by TitlePro's and Khan's defalcations. Indeed, the object of TitlePro's and Khan's conspiracy was to defraud secondary market purchasers like Wells Fargo.

In short, each of Old Republic's primary arguments either is predicated on the absence of agency or is defeated by the presence of agency. Old Republic's inability to establish the absence of agency for TitlePro's and Khan's settlement and escrow defalcations therefore is fatal to its motion. Old Republic's few remaining arguments not based on the absence of agency are equally without merit. Accordingly, the Court should deny Old Republic's motion to dismiss.

## STATEMENT OF FACTS

The conspiracy giving rise to this action involved a scheme to originate unsecured residential real estate mortgage loans and to sell those loans as secured first-lien or second-lien mortgages to financial institutions, such as Wells Fargo, in the secondary loan market (the "Conspiracy"). (Compl. ¶ 12.) The four known conspirators are TitlePro, Khan, FMI, and Taneja (collectively the "Conspirators"). (*Id.* ¶ 13.)

### A.    The Conspirators

FMI was in the business of making residential home loans to individuals and then selling

the loans in the secondary loan market to financial institutions such as Wells Fargo. (Compl. ¶ 14.) Taneja was the president and founder of FMI, and he owned, operated and controlled FMI. (*Id.* ¶ 15.)  Taneja has been prosecuted in this Court for his role in the Conspiracy in *United States v. Taneja*, Case No. 1:08CR00428-001 (E.D. Va.). (*Id.* ¶ 16.)  On November 13, 2008, Taneja signed a statement of facts in which he admitted that he conspired with an agent of TitlePro to defraud financial institutions in the secondary mortgage market.  (*Id.*)

TitlePro was a title company that was based in Fairfax County, Virginia and is no longer operating.  (Compl. ¶ 17.)  TitlePro was in the business of providing services related to real estate closings, including searching and examining title records, recording documents in official land records, hosting and executing real estate closings, holding funds in escrow, and issuing title and closing related contracts, including title commitments, title insurance policies, and closing protection letters.  (*Id.*)  TitlePro was an authorized agent of Old Republic during the time of the transactions that are at issue.  (*Id.*)

Khan was a title agent affiliated with TitlePro.  (Compl. ¶ 18.)  Khan owned, controlled and operated TitlePro.  (*Id.*)

### B.     The Conspiracy to Defraud

In November 2004, FMI and Wells Fargo entered into a Loan Purchase Agreement (the "Loan Agreement") whereby Wells Fargo agreed to purchase from FMI certain residential mortgage loans.  (Compl. ¶ 20.)  Pursuant to the Loan Agreement, FMI sold to Wells Fargo the notes at issue in this case, which were purportedly secured by deeds of trust in first-lien position on 16 properties located in the Commonwealth of Virginia (the "Virginia Properties").  (*Id.* ¶¶ 20, 27, 47.)

FMI and Taneja, working with TitlePro and Khan, apparently prepared fraudulent mortgage loan documents by having legitimate FMI borrowers, at the time of closing, sign

multiple sets of "original" loan documents.  (Compl. ¶ 22.)  FMI then used these multiple

"original" loan documents to create multiple fraudulent notes — purportedly secured by deeds of

trust with "first-lien" priority on the same Virginia Property — which FMI then sold to multiple

financial institutions in the secondary loan market.  (*Id*.)  In addition, TitlePro and Khan set up

fraudulent escrow accounts and misappropriated the deposited funds rather than using them for

their designated purpose — paying-down prior liens.  (*Id*. ¶ 24.)

Acting in their capacity as Old Republic's agents, TitlePro and Khan cloaked the

fraudulent mortgage loans with a false veil of legitimacy.  (Compl. ¶ 24.)  Specifically, TitlePro

and Khan prepared title documents for the Virginia Properties that the Conspirators had no

intention of filing. (*Id*.)  TitlePro and Khan hosted and administered settlement proceedings to

create title and settlement documents necessary to facilitate the Conspiracy.  (*Id*.)  TitlePro and

Khan also issued title insurance commitments, title insurance policies, closing protection letters,

and similar title insurance documents in connection with the Virginia Properties.  (*Id*.)  Khan

notarized many of the key documents used in the Conspiracy.  (Compl. ¶ 23.)

As part of the Conspiracy, the Conspirators made numerous fraudulent

misrepresentations regarding the mortgages on the Virginia Properties to Wells Fargo, including

but not limited to, misrepresentations that:

- Wells Fargo's deeds of trust on each of the Virginia Properties would have sole and uncontested first-lien status (Compl. ¶ 25);

- the proceeds from the notes that Wells Fargo purchased from FMI were used to satisfy prior liens on most of the Virginia Properties (*id.*); and

- TitlePro would file, and/or had filed, a deed of trust securing each of Wells Fargo's notes in the Virginia land records (*id.*).

Wells Fargo relied on these misrepresentations when it purchased the mortgage loans at

issue in this case.  (Compl. ¶ 26.)  Had Wells Fargo known that the notes at issue in this case

were not secured by deeds of trust in first-lien position on the Virginia Properties, it would not have purchased those notes. (*Id.*)

### C.    TitlePro's Agency Relationship with Old Republic

At all times relevant to the transactions at issue in this case, TitlePro and Khan were acting as agents of Old Republic. (Compl. ¶¶ 28, 30.) Old Republic and TitlePro entered into a written agreement in which Old Republic appointed TitlePro to be Old Republic's agent in the Commonwealth of Virginia. (*Id.* ¶ 31.) The written agreement authorizes TitlePro to sign, countersign and issue — on Old Republic's behalf — commitments, binders, title reports, certificates, guarantees, title insurance policies, endorsements and other agreements by which Old Republic assumes liability for the condition of title to real estate located in Virginia. (*Id.*)

Old Republic publicized its agency relationship with TitlePro and Khan. For example, Old Republic required TitlePro to use forms bearing Old Republic's name and trademarks in dealings with members of the public. (Compl. ¶ 32.) Old Republic also advertised its agency relationship with TitlePro and Khan and recommended them as agents in good standing on its website at http://agentstanding.oldrepublictitle.com. (*Id.* ¶ 36.)

Old Republic exerted significant control over the manner in which TitlePro and Khan fulfilled their settlement and escrow responsibilities. (Compl. ¶ 37.) Old Republic required TitlePro to maintain and preserve files in a specified manner and required TitlePro to submit monthly reports to Old Republic. (*Id.*) It established a right to audit and review TitlePro's files, including TitlePro's policy inventory, title insurance files, and all financial and business records relating to any escrow closing or settlement functions conducted by TitlePro. (*Id.*) It required TitlePro to adopt specific procedures for handling funds and imposed time limits regarding the frequency with which TitlePro must reconcile its accounts, including escrow accounts. (*Id.*) It required TitlePro to submit an income statement and balance sheet to Old Republic every year.

(*Id.*)  Old Republic even demanded the right to investigate the personal reputation, character, personal characteristics, and mode of living of TitlePro's agents.  (*Id*.)  In fact, after TitlePro ceased operating, Old Republic took possession of TitlePro's files.  (*Id*. ¶ 38.)

Old Republic has admitted in a related case that it is liable for harm caused by the Conspiracy under the terms of the title insurance and closing protection letters TitlePro issued on its behalf.  (Compl. ¶ 39.)  Old Republic filed a proof of claim in Taneja's bankruptcy proceeding asserting a claim for $231,412.59 for amounts it paid  "pursuant to the terms of the Commitment and CPL [closing protection letter] to protect * * * the priority of the deed of trust securing" a loan purchased by a different Wells Fargo entity.  (*Id.*)  *See* Ex. A, Proof of Claim. In an attachment to the proof of claim, Old Republic admitted the existence of the Conspiracy, that TitlePro participated in the Conspiracy, and that TitlePro was an "agent for" Old Republic. (Compl. ¶  30.)

### D.    The Contracts That Old Republic Issued Through TitlePro

Old Republic, acting through its agent TitlePro, issued title commitments, title insurance policies, and closing protection letters in each of the transactions involving the Virginia Properties that are at issue in this case.  (Compl. ¶ 40.)  The title commitment, title insurance policy and closing protection letter that Old Republic issued for each of the Virginia Properties together constitute one valid and enforceable contract.  (*Id.* ¶ 173.)

The title commitments obligated Old Republic to issue an insurance policy containing — and bound Old Republic to — the terms of the American Land Title Association ("ALTA") Loan Policy, as revised on October 17, 1992 ("ALTA Loan Policy").  (Compl. ¶ 41.)  Under the terms of the ALTA Loan Policy, Old Republic insures, among other things, against loss sustained or incurred by the "insured" by reason of  "[t]itle to the estate or interest described in Schedule A being vested other than as stated therein; [a]ny defect in or lien or encumbrance on the title;

[u]nmarketability of the title; . . . [t]he invalidity or unenforceability of the lien of the insured

mortgage upon the title; [or t]he priority of any lien or encumbrance over the lien of the insured

mortgage." (*Id.*) The ALTA Loan Policy defines "insured" to include successors (such as

secondary market purchasers like Wells Fargo) and absolves successors who are purchasers for

value without notice of certain defenses, defining "insured" to include:

> the owner of the indebtedness secured by the insured mortgage and
> each successor in ownership of the indebtedness * * * (reserving,
> however, all rights and defenses as to any successor that the
> Company would have had against any predecessor insured, *unless
> the successor acquired the indebtedness as a purchaser for value
> without knowledge* of the asserted defect, lien, encumbrance,
> adverse claim or other matter insured against by this policy as
> affecting title to the estate or interest in the land).

(*Id.* ¶ 43, emphasis added.) Wells Fargo purchased the notes at issue in this case for value and

without knowledge of the defects, liens, encumbrances, adverse claims and other matters that

deprived Wells Fargo of its promised security interests in the Virginia Properties. (*Id.* ¶ 44.)

Old Republic, acting through TitlePro, also issued closing protection letters ("CPLs") for

transactions involving the Virginia Properties at issue in this case. (Compl. ¶ 45.) In the CPLs,

Old Republic agreed to reimburse FMI and its successors for, among other things, losses caused

by "[f]ailure of the Issuing Agent [TitlePro] to comply with your written closing instructions"

and "[f]raud or dishonesty of the Issuing Agent [TitlePro] . . . in handling your funds or

documents in connection with such closings . . . ." (*Id.* ¶ 46.)

### E. The Virginia Properties, Deeds of Trust, and Transactions at Issue

Pursuant to the conspiracy, FMI sold to Wells Fargo 17 notes based on fraudulent

misrepresentations that each of Wells Fargo's notes would be protected by a "first lien" security

interest in one of the Virginia Properties, or, in one case, by a valid second lien on a Virginia

Property. (Compl. ¶ 47.) Wells Fargo's losses in this case include unpaid principle and interest

due under these 17 notes in the amount of $9,702,971.87.  (*Id*.)  For each of the properties,

TitlePro and Khan committed one or more of the following defalcations:

- misappropriating escrow funds;

- failing to record title documents in county land records; and/or

- preparing multiple copies of title documents to facilitate multiple fraudulent sales of the same note secured by the same deed of trust.  (*Id.* ¶¶ 48-171.)

For each Virginia Property, TitlePro issued title insurance in Old Republic's name.  (*Id.*)  To

date, all of the loans that were supposed to be secured by deeds of trust in first-lien position on

the Virginia Properties have fallen into default, and several of the loans have been rendered

unsecured by foreclosure actions initiated by lenders with a superior lien.  (Compl. ¶ 27.)

## ARGUMENT

Old Republic's motion to dismiss falls far short of the high bar set by Federal Rule of

Civil Procedure 12(b)(6).  As the United States Court of Appeals for the Fourth Circuit

recognized in *Rogers v. Jefferson-Pilot Life Insurance Co.*, "a rule 12(b)(6) motion should be

granted only in very limited circumstances."  883 F.2d 324, 325 (4th Cir. 1989).  Thus, a motion

to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

As the U.S. Supreme Court held in *Erickson v. Pardus*, Wells Fargo must provide:

> only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the * * * claim is and the grounds upon which it rests.'"  In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citations omitted).  Where, as here, contracts are at

issue, "the construction of ambiguous contract provisions is a factual determination that

precludes dismissal on a motion for failure to state a claim." *Martin Marietta Corp. v. Int'l Telecoms. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1993).

As explained below, Old Republic's arguments for dismissing Wells Fargo's complaint are contrary to Virginia law and raise questions of fact that cannot appropriately be resolved on a motion to dismiss. Accordingly, the Court should deny Old Republic's motion to dismiss.

## I.   WELLS FARGO ADEQUATELY PLED THE FACT OF TITLEPRO'S AND KHAN'S ACTUAL AND APPARENT AUTHORITY TO ACT AS AGENTS OF OLD REPUBLIC.

Old Republic's arguments for dismissing Wells Fargo's claims are based on the false premise that Title Pro and Khan were not acting under Old Republic's actual or apparent authority.[2] Old Republic argues (at 24) that title agents, as a matter of law, wear "two hats" — one hat for title insurance activities (for which Old Republic concedes it is liable) and a different hat for closing and escrow activities (for which Old Republic contends it is not liable). As explained below, Old Republic's "two hats" theory is contrary to Virginia law and, with respect to common law agency, raises questions of fact that cannot be resolved on a motion to dismiss.

### A.   By Virginia Statute, TitlePro and Khan are Old Republic's Agents for Purposes of Wells Fargo's Claims.

In its complaint, Wells Fargo identified the provisions of the Virginia Code that govern a title insurer's agency relationship with its title agents. (*See* Compl. ¶ 29, discussing Va. Code §§ 6.1-2.21 and 38.2-1801.) Wells Fargo also explained that these provisions render TitlePro and Khan agents of Old Republic for purposes of Wells Fargo's claims. (*Id.*) Nevertheless, Old Republic's motion to dismiss does not reference these statutory provisions. As discussed below, these statutory provisions compel the Court to reject Old Republic's flawed "two hats" theory of agency and to hold that TitlePro's and Khan's defalcations fall within their agency relationship

---

[2]     *See* Memorandum in Support of Old Republic National Title Insurance Company's Motion to Dismiss ("OR Mem.") at 22-27.

with Old Republic for purposes of Wells Fargo's claims.

Under Virginia's Consumer Real Estate Settlement Protection Act ("CRESPA"), Va. Code § 6.1-2.19, *et seq.*, title insurers like Old Republic must accept responsibility for the actions of their affiliated title agents.  Va. Code § 6.1-2.21 requires that "[a]ny title insurance agent acting in the capacity of a settlement agent shall be appointed by a title insurance company licensed in the Commonwealth pursuant to Chapter 18 (§ 38.2-1800 et seq.) of Title 38.2."  In turn, the Virginia Insurance Code, Va. Code § 38.2-1801, describes a key consequence of that appointment for purposes of this case — "[a] licensed agent *shall be held to be the agent of the insurer* that issued the insurance sold, solicited or negotiated by such agent *in any controversy* between the insured or his beneficiary and the insurer."  (Emphasis added.)  Virginia is one of several states that have enacted a statute holding title insurers liable for their title agents' settlement and escrow defalcations.  *See, e.g.,* Fla. Stat. § 627.792; Utah Code § 31A-23a-407.

The provisions of Va. Code §§ 6.1-2.21 and 38.2-1801 require the Court to reject Old Republic's argument, under its "two hats" theory, that Old Republic is only responsible for TitlePro's and Khan's insurance activities and that it is not responsible for TitlePro's and Khan's settlement or escrow activities.  The General Assembly, through the plain language of Va. Code §§  6.1-2.21 and 38.2-1801, permitted no such distinction, instead legislating that an agency relationship be imputed "in *any controversy* between the insured or his beneficiary and the insurer."  Va. Code § 38.2-1801 (emphasis added).[3]

The General Assembly's enactment of Va. Code § 38.2-1801 renders Old Republic's

---

[3]     Old Republic cannot reasonably dispute that Wells Fargo is an "insured" for purposes of Va. Code. § 38.2-1801.  As Wells Fargo alleged in paragraph 41 of the complaint, the title commitments that Old Republic issued through TitlePro incorporated the terms of the ALTA Loan Policy.  The ALTA Loan Policy defines "insured" to include the "insured named" on the policy and "each successor in ownership of the indebtedness."  (*See* OR Mem., Ex. N, p.2.)

arguments concerning cases from jurisdictions without such a statute irrelevant.  Old Republic's

reliance (at 20-21, 23-25) upon *Proctor v. Metropolitan Money Store Corp.*, 579 F. Supp. 2d 724

(D. Md. 2008), is a perfect example.  In *Proctor*, the District of Maryland based its decision, at

least in part, on a provision of the Maryland Insurance Code declaring that a title agent's license

(which is conditioned on the title agent's affiliation with a title insurer) "'does not create any

actual, apparent, or inherent authority in the holder to represent or commit an insurer.'"  *Id.* at

739-40 (quoting Md. Code Ann., Ins. § 10-113).  Thus, *Proctor* is inapposite because it merely

reflects that the Maryland Insurance Code, in direct conflict with Virginia law, does not impose

— and indeed disclaims — an agency relationship between title insurers and their title agents.[4]

In short, the General Assembly has legislated in Va. Code § 38.2-1801 that TitlePro and

Khan "shall be held to be the agent[s] of" Old Republic for purposes of the "controversy"

between Wells Fargo and Old Republic.  Old Republic does not mention this statute.  As Old

Republic's motion to dismiss is based on the absence of agency, the motion should be denied.

### B.  TitlePro's and Khan's Common Law Agency Relationship with Old Republic is an Issue of Fact that Cannot be Resolved on a Motion to Dismiss.

Old Republic mischaracterizes agency, under the common law, as a question of law.  In

the absence of a statute such as Va. Code § 38.2-1801, agency is a question of fact that cannot be

---

[4]     The District of Maryland's decision in *Proctor* is irreconcilable with Virginia law on
other grounds as well.  As discussed *infra* at pp. 16 to 18, the Court should be guided by "the
principle, long recognized both by [the Fourth Circuit] and by the Supreme Court of Virginia,
that 'whenever one of two innocent persons must suffer by the acts of a third, he who has
enabled such third person to occasion the loss must sustain it.'" *Jacobs*, 709 F.2d at 5 (citation
omitted) (finding this principle "dispositive" in the context of a title insurance dispute).  The
District of Maryland ignores this principle.  The District of Maryland also decided the issue of
actual authority on a motion to dismiss and ignored the issue of apparent authority.  Under
Virginia law, a title insurer's agency relationship with its title agents "is an issue of fact" that
may not be resolved on a motion to dismiss.  *Fidelity Nat'l Title Ins. Co. v. Chicago Title Ins.
Co.*, 64 F.3d 656, 1995 WL 478028, *3 (4th Cir. 1995); *see also Virginia Energy Co. v. Phibro
Energy, Inc.*, 711 F. Supp. 870, 873 (W.D. Va. 1989).

determined on a motion to dismiss.

In *Fidelity National Title Insurance Co. of Pennsylvania v. Chicago Title Insurance Co.*, the United States Court of Appeals for the Fourth Circuit held that a title insurer's agency relationship with its title agent is an issue of fact that precluded a motion to dismiss, stating that:

> We may dismiss under Rule 12(b)(6) only if Fidelity can prove no
> set of facts that would entitle it to relief, and therefore we may not
> address the factual issue of the scope of the agency.  We therefore
> reverse the dismissal of this claim.

64 F.3d 656, 1995 WL 478028, *3 (4th Cir. 1995).[5]  Courts applying Virginia law have reached the same conclusion.  For example in *Pinnacle Software Corp. v. Forms, Inc.*, a Virginia circuit court held that a defendant's motion to dismiss based on an objection to agency "is premature as it presents issues of fact."  24 Va. Cir. 96, 1991 WL 834966  (1991).  Likewise, the United States District Court for the Western District of Virginia has held that agency "is an issue of fact and summary judgment is therefore inappropriate."  *Phibro Energ.*, 711 F. Supp. at 873; *Walker v. Winchester Mem'l Hosp.*, 585 F. Supp. 1328, 1331 (W.D. Va. 1984); *see also Metco Prods. Inc. Div. of Case Mfg. Co. v. N.L.R.B.,* 884 F.2d  156, 158 (4th Cir. 1989) (holding under federal law that "[g]enerally, the existence and scope of agency relationships are factual matters").

Old Republic's argument to the contrary is belied by the very cases that Old Republic cites.  For example, *Universal Bank v. Lawyers Title Insurance Corp.* states that "the existence or extent of an agency relationship is a question of fact."  62 Cal. App. 4th 1062, 1066 (Cal. Ct. App. 1997).  Likewise, *Bodell Construction Co. v. Stewart Title Guaranty Co.* decided agency on

---

[5]      Pursuant to the Fourth Circuit's Local Rule 32.1, citation of that court's unpublished decisions issued prior to January 1, 2007 is permitted if the decision "has precedential value in relation to a material issue in a case and * * * there is no published opinion that would serve as well."  The Fourth Circuit's decision in *Fidelity National Title Insurance Co. of Pennsylvania* is the only Fourth Circuit decision we have found addressing the impropriety of a motion to dismiss based on agency principles arising in the context of a title insurer-title agent relationship.

summary judgment "under the undisputed facts of this case."  945 P.2d 119, 124 (Utah 1997).

Old Republic also fails to recognize that it, rather than Wells Fargo, bears the burden of proving the bounds of TitlePro's and Khan's common-law agency.  Old Republic concedes (at OR Mem. 1 and 22-23) that it had an agency relationship with TitlePro and Khan.  "Where an agency relationship has been established, the burden is on the principal to prove that the agent was not acting within the scope of his authority * * *."  *United Bhd. of Carpenters & Joiners of Am. v. Humphreys*, 127 S.E.2d 98, 102 (Va. 1962).

In this case, Old Republic alleges that its agency agreement "expressly provides that TitlePro is not an agent of Old Republic for closing and/or escrow purposes."  (OR Mem. at 23.) However, an agency agreement is but one piece of evidence, to be considered amongst all the evidence, when determining the scope of agency.  Otherwise, a principal could, by agreement, narrowly restrict its liability despite having a much broader agency relationship.  As the United States District Court for the Western District of Virginia held in *United States v. Fulcher*,

> "At least if the rights of a third person are involved, powers will be implied on the basis of conduct despite the failure of the express agreement to give such powers, *and indeed, even though they are specifically prohibited by the original agreement creating the agency.*"

188 F. Supp. 2d 627, 635 (W.D. Va. 2002) (quoting 2A C.J.S. *Agency* § 155, pp. 783-84; emphasis omitted).

In its complaint, Wells Fargo alleged more than enough facts to establish that TitlePro and Khan exercised Old Republic's actual authority when they provided closing and escrow services.  Specifically, Old Republic mandated that TitlePro follow specific procedures for handling funds in escrow and required TitlePro to submit to Old Republic, for auditing and review, all of TitlePro's files, policy inventory, insurance files, and all financial and business records relating to *any escrow, closing or settlement functions* conducted by TitlePro. (¶ 37(c)-

(d)).  Additionally, Old Republic took possession of TitlePro's files after TitlePro ceased

operating. (*Id.* ¶  38.)  Old Republic, having exercised such complete control over TitlePro's and

Khan's settlement and closing activities, cannot escape liability for those activities based on a

disclaimer that fails to reflect the realities of its relationship with TitlePro and Khan.  *See*

*Fulcher*, 188 F. Supp. 2d at 635; 2A C.J.S. *Agency* § 155, pp. 783-84.

Likewise, Wells Fargo has pled facts establishing that TitlePro and Khan acted with Old

Republic's apparent authority.  Specifically, Old Republic required TitlePro and Khan to use Old

Republic's name and trademarks when dealing with the public and recommended TitlePro and

Khan as agents in good standing on its website, http://agentstanding.oldrepublictitle.com.

(Compl. ¶¶ 32, 36.)  Old Republic has offered no response to these allegations.  Accordingly,

Wells Fargo has adequately pled TitlePro's and Khan's common law agency with Old Republic.

### C.    Old Republic is Liable for Wells Fargo's Losses Because Old Republic Enabled TitlePro's and Khan's Fraud.

Old Republic errs when it states (at 23) that "Wells Fargo's attempt to expand the scope

of TitlePro's agency is a theory that has been tried before, but courts have consistently held that a

settlement agent is not an apparent agent of a title insurance company."  This statement by Old

Republic is demonstrably false, as numerous courts have held title insurers liable for their

agents' settlement and escrow defalcations.

As an initial matter, Old Republic's claim to "consistency" is, at best, misleading.  Old

Republic fails to mention that Virginia and other states have enacted statutes holding title

insurers liable for the defalcations of their settlement agents.  *See*, *e.g.* Va. Code § 38.2-1801;

Fla. Stat. § 627.792; Utah Code § 31A-23a-407.  Even in states without such statutes, courts

have applied common law, including a principle that is fundamental in Virginia law, to hold title

insurers liable for their agents' defalcations.  As the United States Court of Appeals for the

Fourth Circuit held in the title insurance context in *Jacobs v. Chicago Title Insurance Co.*,

> The district court then identified as dispositive the principle, long
> recognized both by this court and by the Supreme Court of
> Virginia, that "whenever one of two innocent persons must suffer
> by the acts of a third, he who has enabled such third person to
> occasion the loss must sustain it."

709 F.2d at 5 (citation omitted).  The Fourth Circuit agreed that this principle should be treated

as dispositive and affirmed the district court's decision.  *Id.*

Old Republic's false suggestion of "consistency" notwithstanding, numerous courts have

applied this fundamental principle to hold a title insurer liable when its title agent's defalcations

harm an innocent party like Wells Fargo.  In *Richards v. Attorneys' Title Guaranty Fund, Inc.*,

the United States Court of Appeals for the Tenth Circuit upheld a verdict holding a title insurer

liable for its agent's theft of funds placed in escrow based on "the legal principle recognized by

the courts of Colorado that, when one of two innocent persons must suffer from the acts of a

third, he must suffer who put it in the power of the wrongdoer to inflict the injury."  866 F.2d

1570, 1572-73 (10th Cir. 1989).  Courts came to the same result for the same reason in *Sears*

*Mortgage Corp. v. Rose*, 634 A.2d 74, 83 (N.J. 1993); *Lawyers Title Insurance Corp. v. Edmar*

*Construction Co., Inc.*, 294 A.2d 865, 869-70 (D.C. 1972); *Myerson v. Lawyers Title Insurance*

*Corp.*, 39 A.D.2d 190, 194 (N.Y. Sup. Ct., App. Div. 1972); and *First American Title Insurance*

*Co. v. Vision Mortgage Corp.*, 689 A.2d 154, 157 (N.J. Super. 1997).

Moreover, other courts have held a title insurer liable for its title agent's defalcations

without stating this basic principle of agency.  *See, e.g., Ford v. Guarantee Abstract and Title*

*Co.*, 553 P.2d 254, 268 (Kan. 1976) (holding title insurer liable for punitive as well as

compensatory damages); *RTC Mortgage Trust 1994 N-1 v. Fidelity Nat'l Title Ins. Co.*,

58 F. Supp. 2d 503, 539 (D.N.J. 1999) (basing liability, *inter alia*, on the title agent's apparent

authority to act on the title insurer's behalf.)

In this case, there can be no reasonable dispute that Wells Fargo is an innocent party and that Old Republic enabled TitlePro and Khan to perpetrate the conspiracy to defraud Wells Fargo and other lenders.  Under such circumstances, Virginia law compels the Court to follow *Richards, Sears Mortgage Corp.*, *Lawyers Title Insurance Corp.*, *Myerson*, and *First American Title Insurance Co.* and hold Old Republic liable for TitlePro's and Khan's defalcations.

> **D.** **Even Under Old Republic's Erroneously Narrow View of Agency, TitlePro and Khan Used Old Republic's Actual Authority to Further the Conspiracy.**

Old Republic has conceded, at least for purposes of its motion to dismiss, that TitlePro and Khan were operating under Old Republic's actual authority when they issued the title commitments and closing protection letters at issue in this case.  On pages 22-23 of its memorandum, Old Republic states that the Agency Agreement between it and TitlePro stated that "Insurer appoints Agent a policy issuing agent for insurer for the purpose of * * * issuing commitments, binders, title reports, certificates, guarantees, title insurance policies, endorsements, and other agreements * * *."

In the complaint, Wells Fargo alleged that TitlePro and Khan used this very authority to further their conspiracy to defraud Wells Fargo:

> Acting in their capacity as Old Republic's agents, TitlePro and Khan cloaked the fraudulent mortgage loans in a false veil of legitimacy. * * * TitlePro and Khan also issued — in Old Republic's name and with Old Republic's actual and apparent authority — title insurance commitments, title insurance policies, closing protection letters and similar title insurance documents in connection with the Virginia Properties.

(Compl. ¶ 24.)  Accordingly, Old Republic's motion to dismiss must be denied with respect to Wells Fargo's claims for fraud, business conspiracy in violation of Va. Code § 18.2-499, and common law conspiracy.

## II.      WELLS FARGO HAS STATED AN ACTIONABLE CLAIM FOR BREACH OF CONTRACT.

In the motion to dismiss, Old Republic does not contend that Wells Fargo failed to plead the essential elements of a breach of contract claim.  Instead, Old Republic argues that Wells Fargo is barred from enforcing Old Republic's contractual obligations as a result of TitlePro's and FMI's fraud and other defalcations.  Old Republic also alleges that Wells Fargo cannot enforce one of the closing protection letters that it issued to FMI because that closing protection letter did not contain an "ISAOA-ATIMA" designation.  As we explain below, Old Republic's arguments are without merit.

### A.      The Defalcations of Old Republic's Agents, TitlePro and Khan, are No Bar to Wells Fargo's Breach of Contract Claims Arising Under the Title Commitments.

Old Republic's primary argument for escaping its obligations under the title commitments it issued through TitlePro and Khan is that the commitments contained conditions that "were not satisfied."  (*See* OR Mem. at 9.)  Specifically, Old Republic argues that "[t]he commitments contain various conditions that have to be satisfied (such as the release of prior Deeds of Trust of record, and the recording of the to-be-insured Deed of Trust)."  (*Id.* at 9.)  For the next eight pages, in which Old Republic argues that these conditions were not met for each of the Virginia Properties, Old Republic omits any reference to *who* failed to satisfy those conditions — Old Republic's agents, TitlePro and Khan.  (*Id.* at 9-17.)

Old Republic's argument is baseless because the "prevention doctrine" precludes Old Republic from relying upon the failure of its agents, TitlePro and Khan, to excuse its failure to meet its contractual obligations.  The United States Court of Appeals for the Fourth Circuit described the prevention doctrine in *Moore Brothers Co. v. Brown & Root, Inc.* as "a generally recognized principle of contract law according to which if a promisor prevents or hinders

fulfillment of a condition to his performance, the condition may be waived or excused."

207 F.3d 717, 725 (4th Cir. 2000); s*ee also Whitt v. Godwin,* 139 S.E.2d 841, 844 (Va. 1965)

("he who prevents a thing from being done may not avail himself of the nonperformance for

which he alone is responsible").

In this case, Old Republic, through its agents TitlePro and Khan, was responsible for the

failed conditions.  As Wells Fargo alleged in its complaint, the "prior Deeds of Trust of record"

were not released because TitlePro and Khan misappropriated the money that was to be used to

pay off those "prior Deeds of Trust."  (*See* Compl. ¶¶  5, 24, 25(c), 53, 60, 69, 79, 85, 92, 98,

117, 130, 139, 145, 162, and 169.)  Likewise, the "to-be-insured Deed[s] of Trust" were not

recorded because TitlePro and Khan, in violation of their contractual and statutory duties, did not

record them.  *See* Va. Code § 6.1-2.13 (requiring settlement agents to file a deed of trust within

two business days of settlement).  Accordingly, the prevention doctrine precludes Old Republic

from relying upon the failure of these conditions.

### B.    FMI's Fraud is No Bar to Wells Fargo's Breach of Contract Claims Arising Under the Closing Protection Letters.

Old Republic cites *Selden v. Williams*, 108 Va. 542, 549-50 and Va. Code § 8.01-13[6] for

the proposition that Wells Fargo, as FMI's successor, cannot bring any claim that FMI could not

---

[6]    Old Republic's reliance upon Va. Code § 8.01-13 is misplaced.  The Supreme Court of Virginia has held that § 8.01-13 has a very narrow purpose, "merely to change the effect in bankruptcy of an assignment of accounts receivable * * *."  *Nat'l Bank & Trust Co. v. Castle*, 85 S.E.2d 228, 233 (Va. 1955).  Moreover, on its face, § 8.01-13 only applies to *non*-negotiable instruments.  The Supreme Court of Virginia has repeatedly found notes secured by deeds of trust to be *negotiable* instruments.  *See, e.g., Leven v. Va. Nat'l Bank*, 265 S.E.2d 758, 759 (Va. 1980); *Brown v. Hargraves*, 96 S.E.2d 788, 790 (Va. 1957).  In such circumstances, a "holder in due course" like Wells Fargo "takes the instrument free from * * * all defenses of any party to the instrument with whom the holder has not dealt."  *Leven*, 265 S.E.2d at 760.  Thus, Old Republic has, at best, raised an issue of fact regarding the negotiability of the notes at issue. Finally, section 8.01-13 is irrelevant because, as explained below, Old Republic has no defense arising out of FMI's fraud that it can assert against Wells Fargo because Old Republic, through its agents TitlePro and Khan, had knowledge of that fraud.

bring.  (OR Mem. at 19.)  Old Republic then argues that FMI's fraud precludes FMI, and

therefore Wells Fargo, from enforcing the CPLs.  (*See* OR Mem. at 17-22.)  As explained below,

Old Republic's reliance on FMI's fraud to avoid its contractual obligations to Wells Fargo is

misplaced for four reasons.

> *First*, under the plain language of the ALTA Loan Policy, Old Republic cannot use FMI's

fraud as a defense to Wells Fargo's claims because Wells Fargo purchased the notes for value

and without knowledge of FMI's fraud.  As Wells Fargo alleged in paragraph 173, "[t]he title

commitment, title insurance policy and closing protection letter * * * together constitute one

valid and enforceable contract."[7]

> The plain language of the ALTA Loan Policy absolves a "successor" such as Wells Fargo

of defenses that could be brought against a "predecessor insured," such as FMI.  The ALTA

Loan Policy states that Old Republic:

> > reserv[ed] all rights and defenses as to any successor that the
> > Company would have had against any predecessor insured, *unless*
> > the successor acquired the indebtedness *as a purchaser for value*
> > *without knowledge* of the asserted defect, lien, encumbrance,
> > adverse claim or other matter insured against by this policy as
> > affecting title to the estate or interest in the land.

ALTA Policy, Ex. N to OR Mem., at 3 (emphasis added).  In this case, Wells Fargo pled that

"Wells Fargo purchased each of the notes at issue in this case from FMI for value and without

knowledge of the defects, liens, encumbrances, adverse claims and other matters that deprived

---

[7]     This fact, which cannot be challenged on a motion to dismiss, is supported by authority.
As the Supreme Court of Virginia held in *Daugherty v. Diment*, "[w]here a business transaction
is based upon more than one document executed by the parties, the documents will be construed
together to determine the intent of the parties; each document will be employed to ascertain the
meaning intended to be expressed by the others."  385 S.E.2d 572, 574 (Va. 1989).  Consistent
with this general principle of Virginia law, the Supreme Court of New Jersey found that a CPL
must be construed as part of the title insurance policy in *Clients' Security Fund of the Bar of New
Jersey v. Security Title & Guaranty Co.*, 634 A.2d 90, 99 (N.J. 1993).

Wells Fargo of its promised security interests in the Virginia Properties." (Compl.

¶ 44.) Old Republic cannot dispute these facts on a motion to dismiss.

*Second*, Old Republic cannot rely upon FMI's fraud to rescind the CPLs because Old

Republic, through its agents TitlePro and Khan, possessed full knowledge of the fraud and

therefore could not reasonably rely upon any misrepresentation by FMI.  In *Foremost Guaranty*

*Corp. v. Meritor Savings Bank*, the United States Court of Appeals for the Fourth Circuit held

that insurers could not rescind a mortgage insurance policy based on alleged oral

misrepresentations because the insurers "had in their possession the written memoranda

contradicting the oral representations." 910 F.2d 118, 127 (4th Cir. 1990).  The Virginia

Supreme Court has likewise rejected attempts by insurers to disavow knowledge of facts known

by their agents.  In *Employers Commercial Union Insurance Co. of America v. Great American*

*Insurance Co.*, the Virginia Supreme Court held:

> "The insurance agent, within the general scope of the business he
> transacts, is Pro hac vice the insurance company.  What he knows,
> they know. What he does, they do."

200 S.E.2d 560, 563 (Va. 1973) (citation omitted).

In this case, Old Republic could not reasonably rely on FMI's fraud.  Old Republic's

agents, TitlePro and Khan, were participating in the fraudulent scheme and their knowledge is

attributed to Old Republic.[8]  As a result, Old Republic is precluded from relying upon FMI's

fraud to escape its contractual obligations to Wells Fargo.

---

[8]      TitlePro's and Khan's participation in the conspiracy to defraud does not fall outside their
agency relationship merely because it is intentional and tortious.  "The courts * * * have long
since departed from the rule of non-liability of an employer for willful or malicious acts of his
employee. * * * The test of liability is not the motive of the employee in committing the act
complained of, but whether that act was within the scope of the duties of employment and in the
execution of the service for which he was engaged."  *Commercial Bus. Sys., Inc. v. Bellsouth*
*Servs., Inc.*, 453 S.E.2d 261, 266 (1995) (quoting *Tri-State Coach Corp. v. Walsh*, 49 S.E.2d 363,
366 (Va. 1948)).

*Third*, Old Republic cannot assert FMI's fraud as a defense because Old Republic has not rescinded the insurance policies, including the CPLs, it issued.  In its motion to dismiss, Old Republic confuses a contract that is voidable with a contract that is void *ab initio*.  Old Republic contends (wrongly) that the title commitments and CPLs it issued are "void *ab initio*," yet it cites two cases — *Gateway Bank, FSB v. Chicago Title Insurance Co.*, No. RG04-186151 (Cal. Super. Ct. Dec. 19, 2007) and *St. Paul Fire & Marine Insurance Co. v. Jacobson*, 48 F.3d 778, 780 (4th Cir. 1995) — holding that contracts induced by fraud are "voidable."  (*See* OR Mem. at 18-19.)  As this Court held in *United States v. Idlewild Pharmacy*, "[a] contract induced by fraud is not void, but voidable at the option of the party injured by the fraud."  308 F. Supp. 19, 22 (E.D. Va. 1969).  Because the title insurance policies are merely voidable, FMI's fraud cannot provide Old Republic a defense unless Old Republic rescinds the title insurance policies and returns all premiums paid.  "[A] party seeking rescission of a contract must 'disgorge the fruits of the bargain.'"  *Jones v. Saxon Mortgage, Inc.*, 537 F.3d 320, 326 (4th Cir. 1998) (citation omitted).

Moreover, Old Republic cannot now rescind the title commitments and CPLs it issued because the rights of an innocent third party, Wells Fargo, would be prejudiced.  As the Virginia Supreme Court held in *Martin v. South Salem Land Co.*,

> A contract procured by fraud is not void, but voidable only, at the option of the party defrauded.  It is binding upon him until rescinded, and if, before he exercises the option to rescind, innocent third parties have, in reliance on the fraudulent contract, acquired rights would be prejudiced by its rescission, they may generally have it enforced for their benefit * * *.

26 S.E. 591, 597 (Va. 1897); *see also Wardell v. Birdsong*, 78 S.E. 564, 567 (Va. 1913) (providing that a fraudulently induced party may seek rescission "provided always that * * * the rights of innocent third parties have not intervened").  In this case, Wells Fargo relied upon the

title commitments and CPLs when it purchased the notes at issue.

Additionally, Old Republic is precluded from rescinding the title commitments and CPLs by its own unreasonable delay.  As this Court held in *Idlewild Pharmacy*,

> Ordinarily, one who after discovering the untruth of representations, conducts himself with reference to the transactions as though it were still subsisting and binding, thereby waives all benefits of and relief from the misrepresentations.

308 F. Supp. at 22.  This Court then continued:

> Where a party desires to rescind upon the ground of mistake of fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it.  If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred.  He is not permitted to play fast and loose.  Delay and vacillation are fatal to the right which had before subsisted.

*Id.*  Moreover, Courts have held that insurers have only a short period of time to investigate potential fraudulent inducement and seek rescission.  In *Bernstein v. Nationwide Mutual Insurance Co.*, an en banc panel of the United States Court of Appeals for the Fourth Circuit applied Virginia law to hold that an insurer providing automobile insurance waived its right to seek rescission because it delayed more than 30 days after learning of the potential fraudulent inducement:

> The remedy is to refuse rescission where the policy has been in effect without repudiation after a reasonable time for investigation of the risk.  Thirty days would seem abundant to assure this exploration in the public's protection.  This is but an equitable imposition which the insurer should satisfy before begging the equitable remedy of rescission.

458 F.2d 506, 510 (4th Cir. 1972).

In this case, Old Republic has known of FMI's fraud for more than one year.  In a complaint filed by Old Republic in this Court in *Old Republic National Title Insurance Co. v.*

*First Tennessee Bank National Association*, C.A. No. 1:08cv1225 CMH JFA (E.D. Va. filed Nov. 25, 2008), Old Republic alleges that it was notified in writing of claims arising out of the fraud perpetrated by FMI and TitlePro in a letter dated May 9, 2008.[9]  Accordingly, even if Old Republic attempted to rescind the title commitments and CPLs tomorrow, there would be, at the very least, an issue of fact regarding the reasonableness of Old Republic's delay that would preclude Old Republic from relying upon such an attempted rescission to support its motion to dismiss.

*Fourth*, Old Republic has taken the position, in a proof of claim it filed in Taneja's bankruptcy before the United States Bankruptcy Court for the Eastern District of Virginia, that FMI's fraud *does not* relieve it of its obligations under a CPL.  There, Old Republic seeks $231,412.59 for amounts paid "pursuant to the terms of the Commitment and CPL to protect . . . the priority of the deed of trust securing" a loan purchased by a different Wells Fargo entity.  *See* Ex. A, Proof of Claim, at 2.  Old Republic's attempt to obtain contradictory rulings within the Eastern District of Virginia — a Bankruptcy ruling that FMI's fraud does not relieve Old Republic of its CPL obligations (thereby allowing it to seek subrogation from Taneja for past payments under a CPL) and an opposite ruling from this Court (thereby allowing it to avoid its obligations to Wells Fargo under the CPLs) — undermines the force of its arguments here.

### C.   Wells Fargo is Covered by the Summit Drive Closing Protection Letter Despite the Absence of An Express "ISAOA-ATIMA" Designation

Old Republic also argues (at OR Mem. 22) that Wells Fargo cannot rely upon the CPL it issued with respect to the Summit Drive Property because the CPL did not contain an express

---

[9]      *See* Complaint, *Old Republic Nat'l Title Ins. Co. v. First Tennessee Bank Nat'l Ass'n*, C.A. No. 1:08cv1225 CMH JFA, docket item 1, at ¶ 15 (E.D. Va. filed Nov. 25, 2008).  A copy of that complaint is attached as Exhibit B.

"ISAOA-ATIMA" designation.  As Wells Fargo alleged in its complaint, the "ISAOA-ATIMA" designation refers to "Its Successors And/Or Assigns — As Their Interests May Appear."  (*See, e.g.,* Compl. ¶ 58.)  Old Republic's argument, however, that the absence of such language from the Summit Drive CPL means that the CPL cannot apply for the benefit of successors such as Wells Fargo is baseless.  In making this argument, Old Republic overlooks the fact, pled by Wells Fargo and discussed *supra* p. 21, that the CPL is not a standalone agreement but rather merely one part of an insurance contract that also incorporates the title commitment and the ALTA Loan Policy.  (*See* Compl. ¶ 173.)  For purposes of the motion to dismiss, it does not matter whether Old Republic disputes this fact, because it "is a factual determination that precludes dismissal on a motion for failure to state a claim."  *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1993).

The ALTA Loan Policy expressly states that a successor — here Wells Fargo — is an "insured."  *See supra* pp. 9, 12.  Accordingly, Wells Fargo is covered by the CPL regardless of whether the CPL itself contains an "ISAOA-ATIMA" designation.

### III.  WELLS FARGO ADEQUATELY PLED AN ACTIONABLE CLAIM FOR VIOLATION OF THE WET SETTLEMENT ACT.

Virginia's Wet Settlement Act (the "WSA") obligates settlement agents in certain residential transactions to record deeds of trust promptly.  *See* Va. Code § 6.1-2.13.  The WSA also prohibits settlement agents from disbursing settlement funds before they record the relevant deeds of trust.  *Id.*  As Wells Fargo pled, TitlePro and Khan, acting as Old Republic's agents, breached both conditions.  (*See* Compl. ¶¶ 208-13.)  Old Republic offers two arguments — both without merit — for why Wells Fargo's WSA claim should be dismissed.

First, Old Republic argues that TitlePro's violation of the Act cannot be attributed to it because TitlePro was not its agent for purposes of settlement and closing.  As discussed above at

pages 11 to 18, Old Republic's attempt to disclaim agency is without merit.

Second, Old Republic argues that Wells Fargo does not fall within the class of persons who can bring a claim under the Wet Settlement Act because the Act "makes no mention whatsoever of secondary market purchasers such as Wells Fargo."  (OR Mem. at 28.)  This argument too is baseless, and Old Republic cites no authority in support.

The civil remedies provision of the WSA creates a cause of action on behalf of "any person suffering losses."  Va. Code § 6.1-2.15.[10]  As the Supreme Court of Virginia noted in *Carter v. Commonwealth*, the term "any" in a Virginia statute connotes "'one or some indiscriminately of whatever kind,' 'every,' 'all.'"  562 S.E.2d 331, 335 n.4 (Va. 2002) (quoting Webster's Ninth New Collegiate Dictionary 93 (1989)).  Accordingly, Wells Fargo, as a "person suffering losses," is entitled to bring a claim under the plain language of the WSA.

### IV.   WELLS FARGO HAS ADEQUATELY PLED THE DUTY BREACHED BY OLD REPUBLIC THROUGH ITS AGENTS, TITLEPRO AND KHAN.

As its final argument, Old Republic argues that Wells Fargo's negligence claim should be dismissed because Wells Fargo failed to allege an actionable duty.  (OR Mem. at 28.)  Old Republic's sole support is the Supreme Court of Virginia's statement in *Bartlett v. Roberts Recapping, Inc.*, that "where there is no breach or violation of a legal duty to take care for the safety of the person or property of another there can be no actionable negligence."  153 S.E.2d 193, 196 (Va. 1967).  Yet, this statement merely conveyed the basic principle that a claim for negligence requires a duty.  *See id.* at 197 (holding that a stranded motorist had no duty to safeguard the welfare of good Samaritans that stopped to help her).

---

[10]   There is no dispute that the term "person" include corporations.  *See Dep't of Med. Assistance Servs. v. Beverly Healthcare of Fredericksburg*¸ 601 S.E.2d 604, 608 (Va. 2004) (noting that the "clear import" of a reference to "any person" in a statute included "corporate persons").

In this case, Wells Fargo has pled an actionable duty under Virginia law.  This Court addressed the standards for finding a duty under Virginia law in *Jappell v. American Ass'n of Blood Banks*, 162 F. Supp. 2d 476 (E.D. Va. 2001).  The Court held that "[i]n determining whether a duty exists, the Court considers factors including foreseeability of harm, the likelihood of injury, the magnitude of the burden of guarding against that injury, and the consequences of placing such a burden on the defendant." *Id.* at 480.  Each of these elements is satisfied here.

First, as Wells Fargo pled in paragraph 219 of the complaint, "[i]t was foreseeable that Wells Fargo or another similar financial institution in the secondary market would rely upon the title-related documents prepared by TitlePro and Khan in deciding to purchase notes in the secondary mortgage market" and "trust that TitlePro and Khan executed their settlement related duties."  Indeed, Wells Fargo pled that an object of TitlePro's and Khan's Conspiracy was "to defraud Wells Fargo and other financial institutions * * * in the secondary loan market." (Compl. ¶ 1.)  Old Republic cannot contest these allegations in a motion to dismiss.

Additionally, courts have recognized that "under a traditional lender's title insurance policy," such as the ALTA Loan Policies issued by Old Republic through TitlePro and Khan, "an assignment of the policy to a secondary mortgage market is anticipated as part of the original mortgage transaction." *Norwest Corp. v. Nebraska Dep't of Ins.*, 571 N.W. 2d 628, 635 (Neb. 1997).  Similarly, in *Superior Bank, F.S.B. v. Tandem National Mortgage*, the United States District Court for the District of Maryland held, for purposes of a motion to dismiss, that five title companies and their employees "knew that the information that they were providing about a particular mortgage could be used in connection with a sale of the loan to a buyer on the secondary market."  197 F. Supp. 2d 298, 320 (D. Md. 2000).

Second, it was not only likely — it was a certainty — that Wells Fargo or another similar financial institution in the secondary market would be injured by TitlePro's and Khan's failures to record deeds and satisfy prior liens with escrow funds. As Wells Fargo alleged in its complaint, TitlePro's and Khan's failures rendered the notes at issue effectively unsecured, likely unenforceable, and potentially worthless. (*See* Compl. ¶¶ 178-180.)

Third, finding that TitlePro and Khan had a duty to record title documents and distribute funds in escrow in accordance with closing instructions to pay off prior encumbrances is not an unfair burden to place on title agents. Title agents exist to fulfill these obligations. Moreover, as discussed above at pages 26 to 27, Virginia, under the WSA, imposes a statutory duty upon title agents such as TitlePro and Khan to fulfill these obligation. Accordingly, TitlePro's and Khan's failure to fulfill these duties is not only common law negligence, but also negligence *per se*. *See Williamson v. Old Brogue, Inc.*, 350 S.E.2d 621, 624 (1986) (negligence per se allows a plaintiff to prove "breach" by showing that the defendant violated a statute or regulation that (a) covers the class of activities giving rise to plaintiff's injuries, and (b) was designed to protect the class of persons to which plaintiff belongs).

Finally, a conclusion that title companies owe a duty to lenders is consistent with decisions from other states. In *Midwest Bankcentre v. Old Republic Title Co. of St. Louis*, for example, the Missouri Court of Appeals held that a title company was under a duty to a lender to record a deed of trust, and that the title company could be held liable for the lender's injuries arising out of the title company's failure to file the deed of trust. 247 S.W.3d 116, 127 (Mo. App. 2008). In reaching this conclusion, the Court specifically held that because "one of the most core functions of the title company is to record . . . a deed of trust," "it would only be a small burden, if any, for [the title agent] to have the duty to record the . . . Deed of Trust under

the particular circumstances of this case." *Id.*  The same conclusion applies here.

## CONCLUSION

For the reasons stated above, the Court should deny Old Republic's Motion to Dismiss.


Dated: May 11, 2009                    Respectfully submitted,


                                       By:____/s/_____
                                          William E. Copley
                                          Va. Bar No. 43960
                                          Attorney for Plaintiff Wells Fargo Bank, N.A.
                                          GILBERT OSHINSKY LLP
                                          1100 New York Avenue NW, Suite 700
                                          Washington, D.C. 20005
                                          Telephone:   (202) 772-2200
                                          Facsimile:   (202) 772-1924
                                          copleyw@gotofirm.com

## CERTIFICATE OF SERVICE

I, William E. Copley, attorney for Plaintiff Wells Fargo Bank, N.A., do hereby certify that on May 11, 2009, I will electronically file the foregoing Opposition to Defendant Old Republic National Title Insurance Company's Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following attorneys of record for Defendant Old Republic National Title Insurance Company:

> Frank Douglas Ross, Esq.
> Sean Patrick Roche, Esq.
> Odin Feldman & Pittleman PC
> 9302 Lee Highway
> Suite 1100
> Fairfax, VA 22031
> Tel: (703) 218-2100
> Fax: (703) 218-2160
> Email: douglas.ross@ofplaw.com
> Email: sean.roche@ofplaw.com

> _____/s/_____
> William E. Copley
> Va. Bar No. 43960
> Attorney for Plaintiff Wells Fargo Bank, N.A.
> GILBERT OSHINSKY LLP
> 1100 New York Avenue NW, Suite 700
> Washington, D.C. 20005
> Telephone:   (202) 772-2200
> Facsimile:    (202) 772-1924
> copleyw@gotofirm.com