IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                              )
WELLS FARGO BANK, N.A.,        )
                              )
          Plaintiff,           )
                              )
v.                             )        Civil Action No.# 01:09-cv-297
                              )
OLD REPUBLIC NATIONAL TITLE    )
INSURANCE COMPANY,             )
                              )
          Defendant.           )
                              )
```

## MEMORANDUM OPINION

This matter comes before the Court on the parties' cross-motions for Summary Judgment.

Plaintiff Wells Fargo Bank, N.A. is a national banking association chartered in Sioux Falls, South Dakota with its principal place of business in San Francisco, California. Defendant Old Republic National Title Insurance Company is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. FMI was a Virginia corporation that originated mortgages.

This Court has jurisdiction over Old Republic pursuant to Fed. R. Civ. P. 4(k)(1)(a) and Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, as all of Well Fargo's claims arise out of conduct that occurred within the Commonwealth of Virginia.

Also, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and

Plaintiff Wells Fargo and Defendant Old Republic are citizens of different states.

FMI was owned, controlled and operated by Vijay Taneja ("Taneja"). According to its business plan, FMI originated home mortgages and then sold them to investors in the secondary mortgage market. In order to originate the loans, FMI maintained a warehouse line of credit with various financial institutions. Under the typical warehouse lender agreement, the warehouse lender advanced funds to FMI for a mortgage loan, and FMI would then sell the loan to secondary investors. Once the loan was sold, the warehouse line of credit was replenished with the loan sale proceeds.

In 2004, FMI entered into a Loan Purchase Agreement with Wells Fargo Funding, Inc. ("WFFI") by which WFFI became one of the secondary market investors who purchased mortgage loans originated by FMI. The loans involved in this case were sold to WFFI pursuant to its Loan Purchase Agreement with FMI.

The transactions giving rise to those loans were real estate refinancings and sales for which TitlePro, and its agent Kamran Khan, served as the settlement agent. In January 2007, TitlePro entered into an Agency Agreement whereby it became a policy issuing agent of Old Republic National Title Insurance Company ("Old Republic"). That Agency Agreement expressly stated that TitlePro did not have any authority to act as Old Republic's

-2-

agent for anything other than being a title agent.  The Agency
Agreement stated:

> "Insurer appoints Agent a policy issuing agent for insurer
> for the purpose of signing, countersigning and issuing
> commitments, binders, title reports, certificates,
> guarantees, title insurance policies, endorsements, and
> other agreements under which Insurer assumes liability for
> the condition of title. . ."

In addition, the Agency Agreements expressly provide that
TitlePro was not an agent of Old Republic when it served as a
settlement agent:

> "ESCROWS AND OTHER BUSINESS OF AGENT
>
> A. The relationship created by this Agreement does not
> extend to (1) any escrow, closing or settlement business
> (hereinafter referred to as "Escrow Business") conducted by
> Agent and/or Agent's Principal's, employees or
> Subcontractors; (2) title reports, opinions or certificates
> issued in the name of Agent or (3) to any other activity of
> Agent and/or Agent's Principals, employees or Subcontractors
> that does not involve the Insurer's assumption of liability
> for the condition of the title.
>
> B. Agent agrees not to receive nor receipt for any fund,
> including escrow funds, in the name of Insurer but, rather,
> shall receive and receipt for funds, including escrow funds,
> for its own account.  Agent further agrees to maintain
> adequate records, as may be required by Insurer, as to any
> escrow and closing funds being handled by Agent in
> transactions in which Insurer's Title Insurance Forms are
> issued, and to keep all such funds properly segregated in
> trust or escrow account in a federally insured institution,
> or as otherwise required by state law."

Wells Fargo did not have any communications with Old
Republic before discovering the fraud.  The funds that WFFI used
to purchase the notes were not paid to TitlePro, but were paid
into FMI's accounts.  Old Republic did not receive any monies

-3-

from TitlePro based on TitlePro's services as a settlement agent.

Taneja has been prosecuted for his role in these fraudulent transactions in this Court.  See United States v. Taneja, Case No. 1:08CR00428-001 (E.D. Va. 2008).  On November 13, 2008, Taneja signed a statement of facts along with his plea agreement in which he admitted that he alone executed a scheme to defraud Wells Fargo.  He admitted that he carried out this scheme by creating multiple unrecorded "first" FMI mortgages on the same piece of property that he owned or that was owned by others, without disclosing to Wells Fargo (i) the existence of the other "first" mortgages and (ii) the failure to record any of the mortgages, in violation of the terms of FMI's agreement with Wells Fargo.  Taneja explained that he accomplished this scheme in part by having legitimate FMI borrowers, at the time of closing, sign multiple sets of "original" loan documents, without realizing that the multiple "original" loan documents that they signed were being used fraudulently for multiple loan sales.

Wells Fargo's claims involve notes relating to sixteen (16) properties and seventeen (17) notes. The first of these properties is Summit Drive.  In this transaction, Taneja was refinancing his home for $2,950,000.  Pursuant to the HUD-1, a prior Deed of Trust in favor of BB&T Bank was to be paid off. TitlePro used the refinance loan proceeds to pay off that prior Deed of Trust, and as a result, that Deed of Trust was released

-4-

of record.  TitlePro also cause the refinance Deed of Trust to be recorded among the land records.  After the closing, Taneja, the borrower, signed numerous other $2,950,000 notes and deeds of trust and sold them to other secondary market investors, including WFFI.  None of those other notes or deeds of trust were in TitlePro's file.  The only Deed of Trust in TitlePro's file was a copy of the recorded Deed of Trust, and the only note in TitlePro's fild matched the terms of the recorded Deed of Trust. The note purchased by WFFI was not secured by the recorded Deed of Trust because the recorded Deed of Trust indicated that it secured a note which had an interest rate of 6.25%, but the note and Deed of Trust purchased by WFFI had an interest rate of 6.375%.  Taneja has admitted that he defrauded Wells Fargo with respect to his Summit Drive property, and that he did so on his own, not as a part of any conspiracy with TitlePro.

The next disputed transaction involves 25872 Poland Road. The was also a refinance transaction where the Maharajas obtained two loans from FMI; one for $613,600 and one for $115,050. Pursuant to the HUD-1 Settlement Statement for the $613,600 loan, TitlePro was to pay off two prior deeds of trust in favor of Bank of America.  TitlePro did pay off those deeds of trust and they were released.  The HUD-1 also indicated that TitlePro was to disburse over $365,000 to the Maharajas, and TitlePro did so. TitlePro also caused the deeds of trust securing the two notes to

-5-

be recorded.  The Commitment that TitlePro issued for this

transaction required, as a condition for issuing a title policy,

that a Credit Line Deed of Trust securing $4,345,000 be paid and

released of record.  This Deed of Trust was not paid off as part

of the Maharaja's refinance, not because TitlePro mishandled the

closing funds, but because the borrowers were not borrowing

enough money to pay off this Deed of Trust.  An express condition

of issuing a policy was not satisfied, but it was not due to any

impropriety on behalf of TitlePro.  The impropriety with this

property was that Taneja had again sold other notes to secondary

market investors.

The next disputed transaction involves 15903 Carroll Avenue.

This was a refinance where TitlePro received the loan proceeds

from the warehouse lender, and pursuant to the HUD-1 Settlement

Statement, was to pay off two prior deeds of trust against the

property.  The title Commitment issued by TitlePro for this

transaction required, as a condition of issuing a title policy,

that the two prior deeds of trust be paid and released of record

and that the borrower's Deed of Trust be recorded.  These

conditions for the issuance of a policy were not satisfied

because the two prior Deeds of Trust were not paid off and

released of record, and the borrower's Deed of Trust was not

recorded.

20251 Mohegan Drive is the next disputed transaction.  This

-6-

was a refinance transaction where TitlePro received the loan proceeds from the warehouse lender, and pursuant to the HUD-1, was to pay off the prior Deed of Trust on the property. Wells Fargo contends that TitlePro issued a Commitment for this transaction. That Commitment required, as a condition of issuing a policy, that a prior Deed of Trust be paid and released of record and that the Borrower's Deed of Trust be recorded. The conditions for the issuance of a policy were not satisfied because the prior Deed of Trust was not paid and released of record and the borrower's Deed of Trust was not recorded.

The next property involved in this dispute is 2524 Hilda's Way. This was a sale where TitlePro received the loan proceeds from the warehouse lender and, pursuant to the HUD-1, was to pay off two prior deeds of trust. Wells Fargo contends that TitlePro issued a Commitment for this transaction. That Commitment required, as a condition of the policy, that the two prior Deeds of Trust be paid and released of record, and that the borrower's Deed of Trust be recorded. The conditions for issuing a policy were not satisfied because the borrower's Deed of Trust was not recorded, and the prior Deeds of Trust was not paid and released of record.

The next property involved in this dispute is 13997 Sawteeth Way. This was a sale where TitlePro received the loan proceeds from the warehouse lender, and pursuant to the HUD-1, was to pay

-7-

off two prior deeds of trust. TitlePro issued a Commitment that required, as a condition of issuing a policy, that the seller's Deed to the buyer and the buyer's Deed of Trust be recorded. Neither of these conditions for issuing a policy were satisfied.

2247 Christy Place is the next property. This was a refinance where TitlePro received the loan proceeds from the warehouse lender and, pursuant to the HUD-1, was to pay off two prior deeds of trust. Wells Fargo contends that TitlePro issued a Commitment for this transaction. That Commitment required, as a condition of issuing a policy, that the two prior Deeds of Trust be paid and released of record, and that the borrower's Deed of Trust be recorded. The conditions for issuing a policy were not satisfied because the two prior Deeds of Trust were not paid off and released of record and the borrower's Deed of Trust was not recorded.

The next property is 3375 Oakham Mount Drive. This was a refinance, but Well Fargo's loan files did not contain a Commitment and Wells Fargo does not contend that TitlePro issued a Commitment for this transaction.

14763 Winding Loop is the next property. This was a refinance where TitlePro received the loan proceeds from the warehouse lender and, pursuant to the HUD-1, was to pay off a prior Deed of Trust. Wells Fargo's loan file included a partial Commitment which required, as a condition of issuing a policy,

-8-

that the prior Deed of Trust be paid and released of record. This condition of issuing a policy was not satisfied because the prior Deed of Trust was not paid and released of record.

The next property involved in this dispute is 12547 Armada Place. TitlePro issued a Commitment for this transaction which required, as a condition of issuing a policy, that a prior Deed of Trust be paid and released of record. The condition for issuing a policy was not satisfied because the prior Deed of Trust was not paid and released of record.

9671 Janet Rose Court is the next property involved. This was a refinance where TitlePro received the loan proceeds from the warehouse lender and, pursuant to the HUD-1, was to pay off a prior Deed of Trust. Although the prior Deed of Trust was not paid off, Wells Fargo's loan file did not contain a Commitment, and Wells Fargo does not content that TitlePro issued a commitment for this transaction.

Next is 3446 Caledonia Circle. TitlePro issued a Commitment for this refinance which required, as a condition for issuing a policy, that a prior Deed of Trust be paid and released of record. This condition for issuing a policy was not satisfied because the Deed of Trust was not paid and released of record.

2827 Wakewater Way is the next property involved. This was a refinance where TitlePro received the loan proceeds from the warehouse lender, and pursuant to the HUD-1, was to pay off a

prior Deed of Trust. Although the prior Deed of Trust was not paid off, Wells Fargo's loan file did not contain a Commitment and Wells Fargo does not contend that TitlePro issued a commitment for this transaction.

The next property involved in this dispute is 17588 Victoria Falls Drive. This was a refinance where TitlePro received the loan proceeds from the warehouse lender, and pursuant to the HUD-1, was to pay off a prior Deed of Trust. Although Wells Fargo's file did not include a Commitment for the transaction, Wells Fargo contends that TitlePro did issue a Commitment. Even if the Commitment was issued, that Commitment would require, as a condition of issuing a policy, that two prior Deeds of Trust be paid and released of record and that the new Deed of Trust be recorded. These conditions of issuing a policy were not satisfied because the prior deeds of trust were not released, and the new Deed of Trust was not recorded.

7918 Edinburgh Drive is the next property involved in this dispute. This was a refinance where TitlePro received the loan proceeds from the warehouse lender, and pursuant to the HUD-1, was to pay off a prior Deed of Trust. TitlePro issued a Commitment for this transaction that required, as a condition of issuing a policy, that the prior Deed of Trust be paid and released or record. The condition of issuing a policy was not satisfied because the prior Deed of Trust was not release of

-10-

record.

The next property involved is 15009 Lutz Court. This was a refinance where TitlePro received the loan proceeds from the warehouse lender and, pursuant to the HUD-1, was to pay off a prior Deed of Trust. TitlePro issued a Commitment for this transaction that required, as a condition of issuing a policy, that the prior Deed of Trust be paid and released of record. The condition of issuing a policy was not satisfied because the prior Deed of Trust was not released of record.

Wells Fargo claims that Defendant Old Republic appointed TitlePro and Khan as its settlement agents in Virginia. Plaintiff further alleges that throughout 2007 and 2008, Khan conspired with Taneja to conduct a series of fraudulent loan transactions that created millions of dollars of worthless mortgage notes that Taneja sold in the secondary market including notes that Wells Fargo purchased.

It is undisputed that Taneja originated loans for real estate purchases and refinances. Khan created HUD-1 settlement statements that misrepresented that the proceeds from those loans would be applied to pay off prior liens on the properties at issue. Instead, Khan sent the escrow proceeds to Taneja, who used the money for his own purposes. Khan also notarized the forged signatures of borrowers on deeds of trust and on promissory notes. Wells Fargo claims that as a result of Khan's

-11-

actions, Wells Fargo purchased seventeen (17) notes that are unsecured and worthless.  Taneja is currently serving a seven year sentence after pleading guilty to his crimes.  Khan apparently has fled the country.

Plaintiff Wells Fargo is seeking partial summary judgment with regard to twelve (12) of the seventeen (17) loans at issue. It contends that Defendant Old Republic is responsible for the frauds and statutory violations committed by Khan and TitlePro. Plaintiff claims that Defendant is liable under four theories.

First, Virginia's Consumer Real Estate Protection Act which makes title insurers liable for the actions of their insurance agents.

Second, Plaintiff claims that Khan used the actual authority that Old Republic granted to him to further his fraudulent activities by "cloaking the sham transactions in a veil of legitimacy."  Plaintiff claims that it would not have purchased the notes at issue if Khan had not represented that title insurance had been purchased.

Third, Plaintiff alleges that Khan was acting within the scope of his apparent authority when he carried out these fraudulent transactions since Defendant had made representations to the public that implied that one of Defendant's agents would handle settlement activities.

Fourth, Defendant negligently or recklessly made Khan its

-12-

agent.  This claim is based on the "numerous red flags" that Old Republic purportedly ignored when it hired Khan.  Plaintiff claims that had Defendant been more careful, its injuries would not have occurred.

Defendant Old Republic moves the court for summary judgment on all counts of the Complaint. Defendant claims that the undisputed material facts show that Khan and TitlePro was not Defendant's settlement agent and, as such, many of Plaintiff's arguments fail.

Further, Defendant claims that since it made no representations to Plaintiff before the disputed transactions, and Plaintiff makes no direct claim of reliance on any action of Defendant that any claim of apparent authority must also fail. Defendant argues that the Consumer Real Estate Protection Act does not apply to settlement activities, so any misdeeds that TitlePro and Khan undertook as a settlement agent do not apply to that statute.  Finally, Defendant claims that it did not act negligently in hiring Khan.

Now, both parties filed motions for summary judgment. Pursuant to Rule 56(c), this Court must grant summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, this Court views the facts in a

-13-

light most favorable to the non-moving party.  <u>Anderson v.</u>
<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

Once a motion for summary judgment is properly made and
supported, the opposing party then has the burden of showing that
a genuine dispute as to any material fact does exist.  <u>Matsushita</u>
<u>Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574,
586-87 (1986).  The mere existence of some alleged factual
dispute between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no genuine issue of material fact.  <u>Anderson</u>, 477 U.S.
at 248.  "Rule 56(e) requires the nonmoving party to go beyond
the pleadings and by [its] own affidavits, or by the
'depositions, answers to interrogatories, and admissions on
file,' designate 'specific facts showing that there is a genuine
issue for trial.'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324
(1986).

The lynchpin of Plaintiff's case is based on construing
TitlePro and Khan as settlement agents of Defendant.  Plaintiff
bases this agency argument on its interpretation of the Consumer
Real Estate Settlement Protection Act ("CRESPA").  Plaintiff
argues that CRESPA requires that title insurers will be held
accountable for their title agents' settlement and escrow
activities.  Plaintiff's argument attempts to use CRESPA to
broaden the express agency relationship that existed between

-14-

TitlePro and Defendant Old Republic.  This argument fails. CRESPA does not mandate that a title agent becomes a settlement agent by virtue of selling, soliciting or negotiating insurance. CRESPA merely authorizes licensed Virginia attorneys, title insurance companies and agents, real estate brokers and financial institutions (or a subsidiary or affiliate thereof), to serve as Settlement Agents and provide "escrow, closing or settlement services" if they register with their respective licensing authority and meet other conditions of their regulatory agencies. See Va. Code §§ 6.1-2.19 through 2.29.

TitlePro and Khan were Defendant's title insurance agents. The agency agreement between TitlePro and Khan expressly provides that TitlePro did not have the authority to act as a settlement agent on behalf of Old Republic.  Any closing services that TitlePro and its agents performed was carried out for TitlePro itself.  Plaintiff argues that the closing protection letters evince an agency relationship for closing purposes.  This argument ignores the fact that the use of a closing protection letter confirms that the settlement agent is not an agent of the title company because a closing protection letter is issued precisely because a title insurer is not liable for the actions of its title insurance agent.

Plaintiff also attempts to argue a claim against Defendant under a theory of apparent authority.  This argument also fails.

-15-

Plaintiff does not offer any evidence that Plaintiff had any contact with Defendant or otherwise relied on any representation made by Defendant.  Virginia law holds that a claim based on apparent agency must be based on the actions of the alleged principal, Defendant, not on the actions of the alleged agent, TitlePro.  See, e.g., Kern v. Barksdale Furniture Corp., 224 Va. 682, 685 (1983).  Further, one who deals with an agent does so at his own peril and has the obligation of ascertaining the agent's authority.  Id.  In order to establish apparent authority, a party must show that it reasonably relied on the principal's conduct or statements which created the apparent authority.  Nolde Bros. v. Chalkley, 184 Va. 553, 567 (1945).  Plaintiff has failed to show reliance on any action or statement of Defendant which could have created any apparent authority for TitlePro to act as a settlement agent because Plaintiff did not have any communication with Defendant before the transactions at issue.  Further, Plaintiff has admitted that it did not undertake any investigation of TitlePro.

Plaintiff's conspiracy counts are based on the theory that TitlePro was Defendant's settlement agent.  Since TitlePro was not Defendant settlement agent, this argument also fails.

Plaintiff's negligence claim also fails.  Plaintiff has shown no common law duty of reasonable care that is owed by either a settlement agent or a title agent to a secondary market

-16-

purchaser.  In Virginia, it is established that "where there is no breach or violation of a legal duty to take care for the safety of the person or property of another, there can be no actionable negligence."  Bartlett v. Roberts Recapping, Inc., 207 Va. 789, 793 (1967).  Plaintiff's claim does not involve harm to a person or damage to its property.  Rather, Plaintiff suffered losses because it acquired notes that it believed were secured by first lien Deeds of Trust, but the notes were not.  As a result, the notes were worthless.  This type of loss is not protected by a common law duty that would support a claim for negligence.

Plaintiff also brings claims for breach of contract based on title commitments and closing protection letters which were issued to FMI, the original lender in these disputed transactions.  These breach of contract claims were assigned to Plaintiff from FMI and, as such, Plaintiff takes these contracts subject to all the claims that could be raised against the assignor even if "the assignee has taken the assignment for value, bona fide, and without notice of the equities...."  Seldon v. Williams, 108 Va. 542, 549-50 (1908); see also Pollard & Bagby, Inc. v. Pierce Arrow, LLC, III, 258 Va. 524, 528 (1999) ("[A]n assignee of a contract obtains his rights from the assignor and, thus, 'stands in the shoes' of the assignor and acquires the same rights and liabilities as if he had been an original party to the contract.").  FMI was a central actor in

-17-

the fraudulent acetifies surrounding these disputed transactions. The scheme that FMI engaged in was to misappropriate money that was intended by Plaintiff to pay off the prior deeds of trust. This fraudulent activity would certainly bar FMI from bringing a claim against Defendant for breach of contract and likewise bars Plaintiff, as the assignee of FMI, from bringing the same claim against Defendant.

Plaintiff's Wet Settlement Act claim also fails.  The Wet Settlement Act applies to settlement agents.  The duties enforced by the statute, such as the duties to record new deeds and disburse funds, are imposed upon settlement agents.  See Va. Code §§ 6.1-2.13 and 2.15.  TitlePro was not an agent of Old Republic when TitlePro served as a settlement agent.  Thus, Old Republic is not liable for any violation of the Wet Settlement Act that TitlePro committed.

For these reasons Plaintiff's Motion for Summary Judgment should be denied, Defendant's Motion for Summary Judgment granted and this case dismissed.  An appropriate order shall issue.

_____/s/_____
Claude M. Hilton
United States District Judge

Alexandria, Virginia

-18-

December _17_ , 2009